UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) ) | C.A. No. 1:24-cr-00070-MSM-AEM-2 |
| THEVENYN NOVA ROSARIO, Defendant. | ) ) ) ) | |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the defendant Thevenyn Nova Rosario's Motion to Suppress (ECF No. 105) and his Motion for a *Franks* Hearing (ECF No. 108).  The Government alleges that Mr. Nova Rosario conspired to distribute over five kilograms of cocaine, in violation of 21 U.S.C. § 846, and that he engaged in money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  (ECF No. 44.)  Mr. Nova Rosario contends that the Government's search of his residence, conducted pursuant to a warrant, violated his rights under the Fourth Amendment because the warrant failed to establish probable cause to believe that evidence would be found there.  (ECF No. 105-1.)  He also requests an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge purported misstatements and omissions contained in the warrant application.  (ECF No. 108.)  For the following reasons, the Court DENIES Mr. Nova Rosario's Motions.

## I.   BACKGROUND

On July 2, 2024, a Federal Bureau of Investigation Special Agent submitted an affidavit in support of applications for search warrants for multiple premises, a vehicle, and two named subjects, one of whom was Mr. Nova Rosario. *See* ECF No. 102 at 11–35 (the "Affidavit").[1] The Affidavit was sworn in connection with an investigation into alleged drug trafficking and money laundering offenses, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 843(b), and 18 U.S.C. §§ 1956 and 1957. Aff. ¶ 1. The premises to be searched included: (1) a property described as the "suspected money stash location"; (2) a property described as the "suspected drug stash"; and, most at issue here, (3) a property described as the shared residence of Mr. Nova Rosario and an alleged co-conspirator, Joemil Torres-Rosario. *Id.*[2] Two exhibits were attached to the Affidavit: first, an affidavit for a tracker warrant for a blue Ford F-150; second, an affidavit and attached exhibits for a "sneak and peek" warrant for a postal package. *See* ECF No. 102 at 78–109 ("Exhibit 1"), 110–137 ("Exhibit 2"). Magistrate Judge Lincoln Almond issued the requested warrants on July 2, 2024, and the warrants were executed that same day.

---

[1] The warrant for Mr. Nova Rosario's alleged residence is 24-SW-189, while the warrant for his person is 24-SW-192. Because the Affidavit applies for both warrants, and because the Government submitted 24-SW-192 as an exhibit, the Court's following citations are all to 24-SW-192.

[2] As will be addressed later, Mr. Nova Rosario contends that the residence was *not*, in fact, Mr. Torres-Rosario's residence. *See* ECF Nos. 105-1 at 9–10; 108 at 2–3. As he does not appear to dispute that the property—which was listed as his home address on his Rhode Island driver's license, *see* Aff. ¶ 28—was his own residence, the Court hereinafter refers to this property as "Mr. Nova Rosario's residence."

The Affidavit and its attached Exhibits (collectively, the "Application") outline the investigation that preceded the search of Mr. Nova Rosario and his residence. On May 15, 2024, United States Postal Investigation Service ("USPIS") inspectors identified four parcels mailed from Valencia, California to four addresses in Rhode Island, one of which was the suspected money stash property, and another the suspected drug stash property. Ex. 1 ¶ 14.[3] All four parcels were of similar weight, were paid for in cash, bore the same California return address, and were tracked from the same IP address. *Id.* ¶¶ 15–16. Although they did not open the parcels at the time, the inspectors deemed them suspicious. *Id.* ¶ 14. Packaging material recovered from dumpsters following controlled deliveries (described below) elicited positive responses from drug dogs, and a similar parcel that was subsequently seized by law enforcement was found to contain six kilograms of narcotics. Ex. 1 ¶ 90; Ex. 2 ¶¶ 36–37; Aff. ¶ 24.

On May 17, 2024, USPIS officers conducted controlled deliveries of two of the four parcels, one of which was to the suspected money stash property. Ex. 1 ¶ 17. Shortly after they delivered the packages, they surveilled his alleged co-conspirator, Mr. Torres-Rosario, retrieving the parcel delivered to the suspected money stash property and driving it to the suspected drug stash property in his blue F-150. *Id.* ¶¶ 21–23. Following another controlled delivery on May 31, 2024 of eight more parcels

---

[3] While these properties may not have yet been identified as the "suspected money stash" and "suspected drug stash" during these earlier stages of the investigation, the Court refers to them as such for clarity.

3

with similar characteristics, investigators again observed Mr. Torres-Rosario retrieving packages delivered to the suspected money stash property, the suspected drug stash property, and another property. *Id.* ¶¶ 25–47. Investigators identified another eight similar parcels by June 3, some of which were again retrieved by Mr. Torres-Rosario following controlled deliveries and taken by him to the suspected drug stash property. *Id.* ¶¶ 51–67.

Pole camera surveillance from June 4th showed Mr. Torres-Rosario arrived at the suspected drug stash property that evening, followed by Mr. Nova Rosario. *Id.* ¶¶ 85–87. Later that evening, Mr. Nova Rosario was seen leaving the suspected drug stash property—carrying two boxes resembling the suspicious parcels—with Mr. Torres-Rosario. *Id.* ¶ 88. Mr. Nova Rosario placed the parcels in Mr. Torres-Rosario's truck. *Id.* The next day, investigators saw Mr. Torres-Rosario leave Mr. Nova Rosario's residence and drive to the suspected drug stash property, where he received, as part of another controlled delivery, two of the parcels that had been identified by June 3. *Id.* ¶¶ 78–80. Pole camera surveillance from later that day showed Mr. Torres-Rosario and Mr. Nova Rosario arrive together at the suspected drug stash property in Mr. Torres-Rosario's truck, at which point Mr. Torres-Rosario carried another box resembling one of the suspicious parcels into the property. *Id.* ¶ 89.

Concurrent with their investigation into the twenty suspected drug packages being sent from California to Rhode Island, investigators identified thirty-four similarly suspicious parcels that were mailed from Rhode Island to two addresses in California. Aff. ¶¶ 14–18; Ex. 1 ¶¶ 71–74; Ex. 2 ¶¶ 32–35, 38–45. These packages

4

were heavily taped, paid for in cash, and bore handwritten return addresses associated with law firms in Providence.  Ex. 2 ¶¶ 32–34.  Through sneak and peek warrants, investigators identified $293,600 in cash contained in several of the parcels.  Aff. ¶ 18.  Post office surveillance identified Mr. Torres-Rosario as the mailer of at least two parcels, and Mr. Nova Rosario as the mailer of at least three, though none of those parcels appear to have been among those confirmed to contain cash. Ex. 2 ¶ 35.

The Affidavit provides several additional details purportedly connecting Mr. Nova Rosario and Mr. Torres-Rosario to what investigators concluded was a criminal drug and money laundering conspiracy.  Police identified a vehicle driven by Mr. Nova Rosario parked at a residence where two vehicles driven by his alleged co-conspirators had been parked earlier.  Ex. 1 ¶ 83.  Two vehicles that were at other times observed at the suspected drug stash location were observed on "numerous occasions" parked in the driveway of his residence.  Aff. ¶ 29.  One of these vehicles was registered to Mr. Nova Rosario at that address, and he was observed as the driver of both vehicles on all occasions when they arrived at the drug stash.  *Id.*  Mail records indicated that both Mr. Torres-Rosario and Mr. Nova Rosario received mail at Mr. Nova Rosario's residence, including from Bank of America and EZ Pass Massachusetts.  *Id.* ¶ 31.

## II.    LEGAL STANDARD

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

5

> violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  Thus, under the Fourth Amendment, a warrant authorizing a search may not be issued "unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011).  Evidence seized pursuant to a search warrant that lacks probable cause or has an insufficiently particularized scope is generally subject to a judicially established "exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009).

Probable cause to support a search warrant must generally be demonstrated through the application for that warrant.  *See United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999).  The warrant application "must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." *Id.*  To find the nexus element satisfied, the judge reviewing the warrant application must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

A court reviewing a magistrate judge's decision to issue a requested warrant must do so "in a practical, commonsense fashion," according "'considerable deference'

to a magistrate's determination that information in a particular affidavit establishes probable cause." *Feliz*, 182 F.3d at 86 (quoting *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996)).  The reviewing court's inquiry is simply "whether the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id.* (quoting *United States v. Taylor*, 985 F.2d 3, 5 (1st Cir. 1993)).

"An affidavit supporting a search warrant is presumptively valid." *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013).  A defendant may attempt to rebut this presumption by making "two 'substantial preliminary showings': (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2) the falsehood or omission was necessary to the finding of probable cause." *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).  If a defendant makes these showings, the defendant is entitled to a so-called "*Franks* hearing" to challenge the affidavit. *Id.*

### III.   DISCUSSION

Mr. Nova Rosario's Motions challenge the Affidavit on mostly related grounds. His Motion to Suppress contends that the Affidavit failed to satisfy the nexus element required for a finding of probable cause to believe that evidence of the alleged offenses would be found in his residence.  (ECF No. 105-1 at 5–13.)[4]  His Motion for a *Franks*

---

[4] Mr. Nova Rosario's Motion to Suppress also argues that the warrant was overbroad and insufficiently particular with respect to his cellphones.  (ECF No. 105-1 at 13–17.)  The Government's Response, however, explains that investigator's eventual search of his cellphones was not conducted pursuant to the warrant at issue here, but through Mr. Nova Rosario's later consent and through different warrants not

Hearing argues that the Affidavit recklessly characterized Mr. Nova Rosario's residence as also being the residence of Mr. Torres-Rosario, who was more directly observed by investigators as being involved in the alleged drug trafficking conspiracy. (ECF No. 108 at 2–5.)[5]  Because the allegations in his Motion for *Franks* Hearing would, if true, preclude reliance on the magistrate judge's finding of probable cause based on the Affidavit, *see United States v. Roman*, 942 F.3d 43, 50 (1st Cir. 2019), the Court analyzes that Motion first.

### A.    Mr. Nova Rosario Has Not Made the Substantial Preliminary Showing to Require a *Franks* Hearing

The bulwark of Fourth Amendment protection is the Warrant Clause, which generally requires police to obtain a warrant "from a neutral and disinterested magistrate before embarking upon a search." *Franks*, 438 U.S. at 164.  The Warrant Clause takes the affiant's good faith as its premise: "when the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Id.* at 164–65 (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y.1966)) (emphasis in original).  But the requirement that the showing be "truthful" is *not* a requirement that each and

---

challenged by Mr. Nova Rosario's present Motions.  (ECF No. 113 at 2.)  Given this explanation, and Mr. Nova Rosario's lack of reply to the Government's brief, the Court concludes that his particularity challenge is moot.

[5] Mr. Nova Rosario moved to amend his initial Motion for Franks Hearing (ECF No. 89) with a more succinct "supplemental motion" containing an attached affidavit from his attorney.  *See* ECF Nos. 107 (First Motion to Amend); 108 (Second Motion to Amend).  As the arguments (and deficiencies) of both his initial motion and his more recent supplemental motion are essentially the same, the Court's citations are to the latter.

every fact contained in the affidavit must be true; instead, it requires that the showing be truthful "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* at 165; *see also United States v. Arias*, 848 F.3d 504, 512 (1st Cir. 2017) (explaining that "mere inaccuracies, even negligent ones, are not enough to warrant a *Franks* hearing") (quoting *United States v. Santana*, 342 F.3d 60, 66 (1st Cir. 2003). The purpose of a *Franks* hearing, therefore, is not to determine whether an affidavit contained a misstatement, but whether police acted in bad faith. *See Franks,* 438 U.S. at 171*.*

To be entitled to a *Franks* hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* Instead, "allegations of deliberate falsehood or of reckless disregard for the truth . . . must be accompanied by an offer of proof." *Id.* This offer of proof must normally be accomplished through "[a]ffidavits or sworn or otherwise reliable statements of witnesses," the absence of which must be "satisfactorily explained." *Id.*

Mr. Nova Rosario's Motion for *Franks* Hearing identifies two alleged mischaracterizations contained within the Affidavit supporting the search warrant application. (ECF No. 108 at 2–6.) First, he takes issue with paragraph 35 of the Affidavit's description of Mr. Nova Rosario's residence as also being Mr. Torres-Rosario's residence. *Id.* at 2. Second, supplementing an earlier motion (*see* ECF No. 89), he contests the Affidavit's attestation that he was "identified" as a shipper of bulk cash proceeds from Rhode Island to California because the parcels that he was seen to have shipped were not among those subject to sneak-and-peek warrants. *Id.* at 5–

9

6. In support of this Motion, Mr. Nova Rosario's attorney submitted his own affidavit identifying alleged discrepancies in the warrant Affidavit. (ECF No. 108-1.) The only factual attestations in Mr. Nova Rosario's attorney's affidavit pertaining to details outside the four corners of the warrant Affidavit are conclusions drawn by the attorney based on "review of the full discovery production." *Id.* at 2–3.

The First Circuit considered a sufficient offer of proof in *United States v. Roman*, when reviewing a district court's suppression of evidence following a *Franks* hearing. 942 F.3d at 48–49. The district court had determined that a series of "easily preventable errors" had demonstrated the investigators' reckless disregard for the truth. *Id.* Most notable among these errors was a serious discrepancy between a critical allegation in a challenged warrant affidavit and a written statement provided by a confidential informant involved in the case. *Id.* This written statement was produced by the defendant in support of his motion for a *Franks* hearing. *See id.*; *United States v. Roman*, 311 F. Supp. 3d 427, 429 (D. Mass. 2018). The First Circuit affirmed the district court's decision to suppress the evidence, agreeing that the challenged affidavit contained "reckless misstatements" that precluded reliance on the magistrate judge's finding of probable cause. *See id.* at 53.

Here, unlike the defendant in *Roman*, the only affidavit supplied by Mr. Nova Rosario in support of his Motion is that of his attorney, who did not witness any of the relevant events. *See* ECF No. 108-1. This affidavit does not contain and is not accompanied by any sworn statements that would contradict anything contained in the warrant Affidavit, such as a sworn statement by a witness (such as Mr. Torres-

Rosario himself) averring that Mr. Torres-Rosario never resided at Mr. Nova Rosario's residence. Instead, his attorney's affidavit contains what are essentially legal objections to the conclusions drawn by the warrant Affidavit. These are the kinds of objections that are to be addressed in a Motion to Suppress, not at a *Franks* hearing. *See United States v. Lewis*, 40 F.3d 1325, 1332 (1st Cir. 1994) (affirming denial of a *Franks* hearing where the only affidavit in support was prepared by an attorney "who had no first-hand knowledge of the relevant events" and contained "only conclusory allegations that the police lacked probable cause or a reasonable articulable suspicion of criminal activity"); *United States v. Cortez*, 108 F.4th 1, 11 (1st Cir. 2024) (affirming denial of a *Franks* hearing where a statement by the defendant's counsel "was not accompanied by any offer of proof" that a challenged identification "was false, nor that it was intentionally or recklessly so").

The omission of any sufficient offer of proof is fatal to Mr. Nova Rosario's Motion for *Franks* Hearing, which must therefore be denied.

### B. The Affidavit Established Probable Cause to Believe Evidence of Criminal Activity Would Be Found at Mr. Nova Rosario's Residence

When reviewing a search warrant affidavit, a magistrate judge may find probable cause to believe that criminal evidence may be found in a suspect's residence even where the affidavit relies on inference rather than direct evidence. *United States v. Gonzalez-Arias*, 946 F.3d 17, 24 (1st Cir. 2019); *see also United States v. Lindsey*, 3 F.4th 32, 39 (1st Cir. 2021) ("As to the nexus requirement, a court need only determine that there is a fair probability—not certainty—that evidence of a crime will be found in a particular location based on the totality of the

11

circumstances.") (internal quotations omitted).  Thus, "[t]he probable-cause nexus between enumerated evidence of the crime and the place 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime].'"  *United States v. Ribeiro*, 397 F.3d 43, 49 (1st Cir. 2005) (quoting *United States v. Charest*, 602 F.2d 1015, 1017 (1st Cir.1979)) (alteration in original).

The First Circuit has repeatedly recognized that "common sense and experience teach that a big-time drug-mover . . . needs *somewhere* to keep his drug money, books, and spoils." *Gonzalez-Arias*, 946 F.3d at 24 (emphasis in original); *see also United States v. Feliz*, 182 F.3d 82, 87–88 (1st Cir. 1999) (explaining that it "could reasonably be supposed" that a regular drug trafficker might keep documentary evidence and drug proceeds in a "safe yet accessible place" like his residence because "where else would he keep them?").  But the mere fact that a residence belongs to a criminal suspect—even a drug trafficker—is not enough to supply probable cause to search that residence.  *Feliz*, 182 F.3d at 88 ("In saying this, we do not suggest that, in all criminal cases, there will automatically be probable cause to search a suspect's residence. All factors must be weighed in each case in order to assess the reasonableness of inferring that evidence of the crime can be found at the suspect's home.").  When the particular facts alleged in an affidavit do not support a reasonable inference that an individual engaged in drug trafficking would keep evidence of those crimes at his own home, the nexus requirement will not be satisfied. *See Roman*, 942 F.3d at 53.

Here, Mr. Nova Rosario challenges the nexus, as attested in the Affidavit, between his residence and the alleged criminal conduct. (ECF No. 105-1 at 5–11.) First, he contends that the only direct link between his residence and purported offenses alleged in the Affidavit is the identification of Mr. Torres-Rosario as having on one occasion driven from the residence to the suspected drug stash. *Id.* at 7–8. Second, he argues that the fact that the Affidavit specifically identifies a "money stash" and a "drug stash" undermines any inference that might be drawn from *Feliz* and related cases that evidence of the alleged conduct would necessarily be found at his residence: presumably, any drugs would be kept at the drug stash, and any drug proceeds would be kept at the money stash property. *Id.* at 8–9. As with his Motion for *Franks* Hearing, Mr. Nova Rosario also challenges the Affidavit's conclusion that he shared his residence with Mr. Torres-Rosario, which—if true—he argues would further undermine any nexus between his residence and the alleged conduct given that Mr. Torres-Rosario was more consistently surveilled in connection with the suspected drug parcels. *Id.* at 9–10.

Mr. Nova Rosario is likely correct that the factual predicate established in the Affidavit for connecting his residence to any *contraband* is relatively slim, and that any drug-trafficker inference based on *Feliz* and related cases is somewhat undermined by the explicit identification of a separate drug stash and a separate money stash. But to satisfy the nexus requirement for probable cause, police need only establish that "there is a fair probability that contraband *or evidence of a crime will be found in a particular place.*" *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

13

(emphasis added); *see also Lindsey*, 3 F.4th at 39 ("fair probability . . . that *evidence of a crime will be found*" in the premises) (emphasis added).  In *Feliz*, for example, the kind of evidence that the First Circuit determined might logically be inferred to be likely to be found at a defendant drug trafficker's residence included "names and telephone numbers of customers and suppliers as well as accounts showing the monies paid and collected."  182 F.3d at 87.

Here, based on the Court's review of the factual allegations contained in the warrant, and giving appropriate deference to the magistrate judge's review of the Application, the Court agrees with the magistrate's finding of probable cause to believe that Mr. Nova Rosario was involved in the alleged large-scale drug conspiracy and money laundering offenses.  With that established, while the Affidavit may have provided limited direct reasons to believe that drugs or drug proceeds might be found in Mr. Nova Rosario's residence, the facts contained within the Affidavit were sufficient to support an inference of a fair probability that other evidence of Mr. Torres-Rosario or Mr. Nova Rosario's alleged criminal conduct—such as bank mailings or other records related to their money laundering efforts—would be found at the residence.  As such, the Affidavit satisfied the nexus requirement for probable cause with respect to Mr. Nova Rosario's residence.

## C.    Police Relied on the Warrant in Good Faith

Even if the connection between Mr. Nova Rosario's residence and the alleged criminal conduct was too tenuous to support probable cause, suppression of any evidence obtained from the search of that residence would not automatically be

14

warranted.  Under the "good faith" exception to the exclusionary rule, evidence will not be suppressed "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope."  *United States v. Leon*, 468 U.S. 897, 920 (1984); *see also United States v. Gonzalez*, 113 F.4th 140, 148 (1st Cir. 2024) ("Under the exclusionary rule, when a magistrate judge issues a warrant that is not supported by probable cause, the evidence obtained from the search is usually suppressed.  That is, unless the *Leon* good-faith exception applies.") (internal citation omitted).  This exception "is based on the principle that, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Gonzalez*, 113 F.4th at 148–49 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)) (alteration in original).

"The government bears the 'heavy burden' of showing that its officers acted with objective good faith."  *Id.* at 149 (quoting *United States v. Wurie*, 728 F.3d 1, 13 (1st Cir. 2013)).  To determine whether this burden is satisfied, a court must evaluate the totality of the circumstances attending the time of the warrant application and its execution.  *Id.*  The Supreme Court has identified four situations that will prevent application of the good-faith exception: first, "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; second, if "the issuing magistrate wholly abandoned his judicial role"; third, where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official

15

belief in [the warrant's] existence entirely unreasonable"; and fourth, where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (citation modified).

The Government has met its burden of showing that officers acted in good faith in executing the search warrant for Mr. Nova Rosario's residence. Even if the nexus between the residence and the alleged conduct—as established by the Affidavit—is at least somewhat tenuous, it cannot be said that there was *no* nexus whatsoever, particularly given the residence's apparent connection to both Mr. Nova Rosario and Mr. Torres-Rosario. There is no evidence that the magistrate judge "wholly abandoned his judicial role," or (as described earlier) that officers intentionally misrepresented any facts or acted with reckless disregard for the truth. Therefore, under these circumstances, any deficiency in the warrant would, under the good-faith exception, not be grounds for suppression of evidence.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Nova Rosario's Motion to Suppress (ECF No. 105) and his Motion for *Franks* Hearing (ECF No. 108) are both DENIED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge


June 8, 2026

16